**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM and FRESNO COUNTY EMPLOYEES' RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANKRATE, INC. et al., <br><br> Defendants. | Case No. 13-cv-7183 (JSR) <br><br><br> **ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS AND (III) APPROVAL OF NOTICE TO THE <u>SETTLEMENT CLASS</u>**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano
John J. Rizio-Hamilton
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Lead Plaintiffs Arkansas Teacher Retirement System and Fresno County Employees' Retirement Association*

Dated:  August 6, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND OF THE LITIGATION...................................................................... 4

ARGUMENT .................................................................................................................... 7

I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............... 7

    A.   The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations
        Conducted By Well-Informed And Experienced Counsel................................. 8

    B.   The Substantial Benefits For The Settlement Class, Weighed Against Litigation
        Risks, Support Preliminary Approval ............................................................... 10

II.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
     PURPOSES IS APPROPRIATE .......................................................................... 12

    A.   The Settlement Class Satisfies The Requirements Of Rule 23(a) ............................... 13

        1.   The Settlement Class Members Are Too Numerous To Be Joined ..................... 13

        2.   There Are Common Questions Of Law And Fact ................................................ 14

        3.   Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class............. 15

        4.   Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The
            Settlement Class.............................................................................................. 17

    B.   The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)........................... 18

        1.   Common Legal And Factual Questions Predominate.......................................... 18

        2.   A Class Action Is Superior To Other Methods Of Adjudication......................... 19

III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .......................... 20

CONCLUSION............................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................13, 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
   504 F.3d 229 (2d Cir. 2007)...............................................................14, 16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................21

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ..............................................................8

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)...................................................................14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)....................................................................8

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..................................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................13

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)..........................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)..................................................................17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..............................................................9

*In re Globalstar Sec. Litig.*,
   No. 01 Civ 1748(PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ..............................15

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................7, 13

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................7, 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................13, 16, 18, 19

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................19

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................10

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................15

*In re Pfizer Inc. Sec. Litig.*,
   No. 04 Civ. 9866(LTS)(HBP), 2012 WL 1059671 (S.D.N.Y. Mar. 29, 2012) ................15, 16

*In re Platinum & Palladium Commodities Litig.*,
   No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)............................................7, 8

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................7

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...........................................................14, 16, 17

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................18

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................9

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................21

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)........................................................................21

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)........................................................................14, 16

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)........................................................................14

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)......................17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................7, 21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)........................................................................12

iii

**Rules and Statutes**

Fed. R. Civ. P. 23(a). ....................................................................................13, 15, 17

Fed. R. Civ. P. 23(b) ....................................................................................18, 19

Lead Plaintiffs Arkansas Teacher Retirement System and Fresno County Employees' Retirement Association ("Lead Plaintiffs"), on behalf of themselves and the Settlement Class (defined below), have reached a proposed settlement of the above-captioned securities class action (the "Action") with defendants Bankrate, Inc. ("Bankrate"), Thomas R. Evans and Edward J. DiMaria for a total of $18,000,000 in cash (the "Settlement").[1]   Lead Plaintiffs respectfully move this Court for an order (i) preliminarily approving the Settlement; (ii) certifying the Settlement Class and appointing Lead Plaintiffs as class representatives and Lead Counsel as class counsel solely for purposes of the Settlement; (iii) approving of the form and manner of providing notice of the Settlement to the Settlement Class; and (iv) scheduling a hearing at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

## INTRODUCTION

Lead Plaintiffs have reached an agreement with Defendants to settle this Action in exchange for $18 million in cash.  If approved by the Court, the Settlement will dismiss and release all claims asserted against Defendants and resolve the Action.

Lead Plaintiffs and Lead Counsel believe that the proposed Settlement represents an excellent result and is in the best interests of the Class.  The Settlement provides the Settlement Class with a substantial and immediate monetary benefit in the form of cash payment of $18 million.  This significant benefit to the Settlement Class must be considered in the context of the serious risk that further protracted litigation might lead to no recovery, or to a smaller recovery,

---

[1]  All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of August 5, 2014 (the "Stipulation"), which is attached as Exhibit 1 to the Notice of Motion.

from Defendants in this Action.  Lead Plaintiffs and Lead Counsel recognized that this Action would present a number of substantial risks in establishing the liability of Defendants before a factfinder, including challenges in establishing that Defendants' statements about the quality of Bankrate's insurance leads were materially false or misleading and in establishing Defendants' scienter.  The Action also presented risks relating to loss causation and damages, because Defendants could point to significant negative information about Bankrate unrelated to the alleged misstatements that was released at the same time as the alleged corrective disclosures, which, they would argue, was responsible for some or all of the declines in the price of Bankrate's common stock.  In light of these risks, Lead Plaintiffs and Lead Counsel believe that the proposed $18 million Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.

The Settlement was reached only after the parties engaged in a mediation process presided over by former federal District Court Judge Layn R. Phillips.  Moreover, the $18 million settlement amount ultimately agreed upon was based on Judge Phillips' recommendation. At the time Lead Plaintiffs agreed to the Settlement, they understood the strengths and weaknesses of their position in the litigation.  Lead Plaintiffs had conducted a detailed investigation of the claims in the Action, which included numerous interviews with former Bankrate employees and a thorough review of publicly available information.  The briefing in response to Defendants' motion to dismiss, and the mediation statements prepared by the parties, which included damages and loss causation analyses prepared by the parties' respective experts, provided Lead Plaintiffs with a further basis upon which to assess the relative strengths and weaknesses of their position and Defendants' position in the Action.

Lead Plaintiffs agreed to the Settlement subject to their right to conduct extensive due diligence discovery.  Specifically, Lead Counsel reviewed over 140,000 pages of documents produced by Defendants, and conducted interviews of multiple senior Bankrate officers, including Bankrate's former Chief Executive Officer (CEO) and its Chief Financial Officer (CFO).  The due diligence discovery confirmed Lead Plaintiffs' and Lead Counsel's belief that the Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.

At the final settlement hearing ("Settlement Hearing"), the Court will have before it more detailed motion papers submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate.  At this time, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class.  Specifically, Lead Plaintiffs request that this Court enter the [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "Preliminary Approval Order"), attached as Exhibit 2 to the Notice of Motion, which, among other things, will:

(i)     Preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    Approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iii)   Find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and

(iv)    Schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees

and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

Lead Plaintiffs also request certification of the Settlement Class, appointment of Lead Plaintiffs as class representatives, and appointment of Lead Counsel as class counsel, for purposes of the Settlement only, under Rule 23.

## BACKGROUND OF THE LITIGATION

On October 10, 2013, Arkansas Teachers filed and served a class action complaint asserting claims against Defendants and others for violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

On January 21, 2014, plaintiffs Arkansas Teachers and Fresno County filed and served the Amended Class Action Complaint (the "Complaint").  The Complaint asserted claims (i) under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Bankrate, Bankrate's former CEO, Thomas R. Evans ("Evans"), and Bankrate's CFO, Edward J. DiMaria ("DiMaria" and, together with Evans, the "Individual Defendants"), and (ii) under Section 20(a) of the Exchange Act against the Individual Defendants and Apax Partners L.P., Apax Partners LLP, and Apax Partners Europe Managers Ltd. (collectively, "Apax Partners"). The gravamen of the Complaint was that the defendants made, or controlled others who made, allegedly materially false and misleading statements about the quality of Bankrate's insurance leads.  The Complaint alleged that these statements and omissions caused the price of Bankrate common stock to be artificially inflated and that the price declined when the truth was revealed.

On January 31, 2014, the Court appointed Arkansas Teachers and Fresno County as Lead Plaintiffs for the class, and approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel.

On February 11, 2014, Bankrate, the Individual Defendants and Apax Partners filed and served their motion to dismiss the Complaint.  On February 25, 2014, Lead Plaintiffs filed and served their papers in opposition to the motion and, on March 4, 2014, Bankrate, the Individual Defendants and Apax Partners filed and served their reply papers.  Oral argument on the motion was held on April 4, 2014.  In a "bottom line" order dated April 15, 2014, the Court denied in part, and granted in part, defendants' motion.  Specifically, the Court sustained the claims against Bankrate and the Individual Defendants but dismissed the Section 20(a) claims against Apax Partners.  On April 30, 2014, the Court issued a Memorandum Opinion setting forth the reasons for its "bottom line" order.

On April 29, 2014, the Court entered a scheduling order directing that fact and expert discovery in the Action be completed by September 12, 2014 and that the parties be ready for trial on October 24, 2014.

Following the resolution of the motion to dismiss, the parties exchanged initial requests for the production of documents, interrogatories and Rule 26(a)(1) disclosures.  On May 15, 2014, Bankrate and the Individual Defendants filed and served their answer to the Complaint.

In early May 2014, the parties also discussed engaging in a mediation, and retained the Honorable Layn R. Phillips to assist in the mediation process.  Judge Phillips is a former federal district court judge in the United States District Court for the Western District of Oklahoma and highly experienced mediator of securities class actions.  On May 30, 2014, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Judge Phillips.  In advance of that session, the parties exchanged detailed mediation statements and exhibits, which addressed the issues of both liability and damages, and included damages analyses conducted by their respective experts, that were also submitted to Judge Phillips.

After the conclusion of the mediation session, Judge Phillips made a mediator's recommendation that the Action be settled for $18,000,000.  The parties accepted Judge Phillips's recommendation and their agreement was memorialized in a term sheet executed on June 6, 2014.

Because of the mandatory PSLRA stay of discovery pending resolution of the motion to dismiss, Lead Plaintiffs had not been able to conduct significant formal discovery in the Action at the time the Settlement was reached.  As part of the agreement to settle, Lead Plaintiffs obtained Defendants' agreement to provide due diligence discovery, including the production of documents regarding the allegations asserted in the Complaint and arranging for the Individual Defendants and other Bankrate employees to sit for interviews or depositions.  Lead Plaintiffs reserved the right to withdraw from the proposed Settlement at any time prior to filing their motion for final approval if, in their good faith discretion, they determined that the information produced during the due diligence rendered the proposed Settlement unfair, unreasonable or inadequate.  Lead Counsel has completed this due diligence discovery, which included the review of over 140,000 pages of documents produced by Defendants and interviews of multiple senior Bankrate officers, including defendants Evans and DiMaria, and Jeff Grant, the CEO of Bankrate Insurance, who headed Bankrate's insurance leads business.  Following the completion of this due diligence discovery, Lead Plaintiffs continued to believe that the Settlement is fair, reasonable and adequate.

In light of the substantial benefits achieved (the payment of $18,000,000 for the benefit of the Settlement Class), the cost and risks of continuing the litigation against Defendants through trial and appeals, and the fact that the proposed Settlement is the result of arm's-length negotiations overseen by an experienced mediator and has been approved by the Court-appointed

Lead Plaintiffs, it is respectfully submitted that the Settlement warrants the Court's preliminary approval so that notice can be provided to the Settlement Class.  It is further submitted that the Court should, for purposes of the Settlement only, certify the Settlement Class, appoint Lead Plaintiffs as class representatives and appoint Lead Counsel as class counsel.

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotations omitted); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'") (citation omitted).

At the preliminary approval stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted).  Preliminary approval of a class action settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (citation omitted).

In making this preliminary determination, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub.*

*Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *accord Platinum &*

*Palladium*, 2014 WL 3500655, at *11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157

(E.D.N.Y. 2009).

Lead Plaintiffs now request that the Court take the first step in the settlement approval

process and grant preliminary approval of the Settlement.  As summarized below, and as will be

detailed further in a subsequent motion for final approval of the Settlement, the proposed

Settlement is well "within the range of possible approval."  *In re Initial Pub. Offering*, 243

F.R.D. at 87 (citation omitted).

### A.    The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

Here, the Settlement was achieved only after arm's-length negotiations between well-

informed and experienced counsel and with the assistance of an experienced mediator.

Following the resolution of the motion to dismiss, the parties explored the possibility of

settlement with the assistance of Judge Phillips, a highly experienced mediator of securities class

actions.  As noted above, the mediation with Judge Phillips included the exchange of detailed

mediation statements and exhibits, which addressed the issues of both liability and damages, as

well as damages analyses conducted by the parties' respective experts.  After the conclusion of

the in-person mediation session on May 30, 2014, Judge Phillips made a mediator's

recommendation that the Action be settled for $18,000,000, which the parties accepted.

The arm's-length nature of the settlement negotiations and the involvement of an

experienced mediator like Judge Phillips supports the conclusion that the Settlement is fair and

was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)

(a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings

were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Derivative &*

*ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in  "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (a settlement was entitled to a presumption of fairness where it was the product of "arms-length negotiation" facilitated by Judge Phillips, "a respected mediator").

In addition, as noted above, the parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle.  Lead Plaintiffs had conducted an extensive investigation prior to filing the Complaint, which included interviews with former Bankrate employees and a thorough review of publicly available information; had prepared a detail Complaint and briefing in opposition to Defendants' motion to dismiss; had consulted with a damages expert; and had the benefit of mediation statements and presentations by Defendants setting forth their arguments on liability, damages, and loss causation.  As a result, Lead Plaintiffs and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

Moreover, Lead Plaintiffs, who are sophisticated investors of the type favored by Congress when passing the PSLRA, have supervised this litigation and recommend that the Settlement be approved.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("under the PSLRA, a settlement reached ... under the supervision and with the endorsement of a sophisticated institutional investor ... is 'entitled to an even greater presumption of reasonableness ....  Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the

settlement.'") (citation omitted).   Further, Lead Counsel, which has extensive experience in prosecuting securities class actions in this District and around the country, has concluded that the Settlement is in the best interests of the Settlement Class.   *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

Given that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by sophisticated Lead Plaintiffs, and was entered into by experienced and informed counsel, preliminary approval is warranted.

### B. The Substantial Benefits For The Settlement Class, Weighed Against Litigation Risks, Support Preliminary Approval

The proposed Settlement creates a total settlement amount of $18 million in cash.   As will be explained in greater detail in advance of the Settlement Hearing, this recovery provides a substantial benefit to the Settlement Class in light of the risks posed by continued litigation.

While Lead Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that this Action presented a number of substantial risks to establishing both liability and damages.   First, Lead Plaintiffs would have faced significant hurdles in proving to the ultimate finder of fact that the statements made by Bankrate and its officers about the quality of Bankrate's insurance leads were materially false and misleading in light of the arguably general and subjective nature of those statements.   The risks to establishing material falsity were exacerbated by the fact that Bankrate disclosed some problems with insurance lead quality and their efforts to address the problems during the Settlement Class Period.   Second, Lead Plaintiffs would have faced meaningful challenges in proving that Defendants had acted with the required intent to defraud or recklessness.   Specifically, Defendants would have argued that they

disclosed certain lead quality problems during the Settlement Class Period, undertook significant and voluntary initiatives to improve lead quality during the Settlement Class Period, and did not discover the full extent of the lead quality problem until the end of the Settlement Class Period, when they disclosed it.

Lead Plaintiffs would also have confronted considerable challenges in establishing loss causation and damages.  Lead Plaintiffs alleged that the price of Bankrate common stock declined in response to disclosures made by Defendants after the close of trading on May 1, 2012 and October 15, 2012, when Bankrate disclosed that large percentages of its insurance leads were of such poor quality that they could not be sold.  However, on both of these dates, Bankrate also released other negative information that could have contributed to the decline in Bankrate's stock price, including less-than-expected revenues from Bankrate's credit card business.  As a result, Lead Plaintiffs faced substantial risks in establishing that the declines in Bankrate's stock price were attributable to corrections of the alleged misstatements and omissions about insurance lead quality rather than the other negative news.  Finally, because a large percentage of Bankrate's common stock was held by Apax Partners during the Settlement Class Period,[2] and only a relatively small portion was held by Settlement Class Members, the total potential damages available to the class in the Action (even ignoring loss causation issues) was limited.  Taking these arguments into account, the $18 million Settlement provides a significant recovery compared to likely recoverable damages.

---

[2] Apax Partners, a private equity firm, took Bankrate private in August 2009.  After Bankrate's Initial Public Offering in June 2011, Apax Partners continued to own as much as 65% of Bankrate's shares.

In the context of these significant litigation risks, Lead Plaintiffs and Lead Counsel believe that the Settlement is an excellent result for the Settlement Class, and that preliminary approval is appropriate.

## II.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which has been stipulated to by the parties, consists of:

> all persons and entities who or which purchased or otherwise acquired the common stock of Bankrate during the period of June 16, 2011 through October 15, 2012, inclusive (the "Settlement Class Period") and who were damaged thereby.

Stipulation ¶ 1(oo).  Excluded from the Settlement Class are Defendants; Apax Partners; Bankrate's and Apax Partners' affiliates and subsidiaries; the officers and directors of Bankrate and Apax Partners at all relevant times (the "Excluded Persons or Entities"); members of the Immediate Family of any Excluded Person; heirs, successors, and assigns of any Excluded Person or Entity; and any entity in which any Excluded Person or Entity or any member of the respective Immediate Families of any Excluded Persons has or had a controlling interest.[3]  *See id*.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.  *See id*.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

---

[3]  Other than minor refinements to the persons and entities excluded from the class, the Settlement Class is the same as the class on whose behalf Lead Plaintiffs asserted claims in the Complaint.  *See* Complaint ¶ 1.

1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX*, 283 F.R.D. at 186 (quoting *In re Giant Interactive*, 279 F.R.D. at 158).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

As demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate here because the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### 1.    The Settlement Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a).  "Impracticable

does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class easily satisfies the numerosity requirement. The Settlement Class is comprised of purchasers or acquirors of Bankrate common stock during a 16-month period. The number of shares of Bankrate common stock outstanding during the Settlement Class Period ranged from approximately 25 to 40 million (not including those shares held by affiliates such as Apax Partners), with an average daily trading volume of over 400,000 shares. Bankrate also reported over 300 record holders of its common stock, which commonly are a small percentage of the total number of beneficial owners, many of whom own stock held by brokers and other nominees. Thus, while the precise number of Settlement Class Members cannot be identified with specificity at this time, it is likely to be at least in the thousands. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.    There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured

by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, No. 04 Civ. 9866(LTS)(HBP), 2012 WL 1059671, at *3 (S.D.N.Y. Mar. 29, 2012) (citation omitted); *see In re Globalstar Sec. Litig.*, No. 01 Civ 1748(PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.") (citation omitted).

Lead Plaintiffs have asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act that present many questions of law and fact common to all Settlement Class Members, including:

- whether Defendants misrepresented or omitted facts about the quality of Bankrate's insurance leads during the Settlement Class Period;

- whether Defendants' alleged misrepresentations and omissions were material;

- whether Defendants acted with scienter;

- whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and

- whether the members of the Settlement Class sustained damages as a result of Defendants' alleged misconduct and, if so, the proper measure of damages.

*See* Complaint ¶ 247.  Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "each class

member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245; *accord In re Pfizer*, 2012 WL 1059671, at *4; *In re Sadia*, 269 F.R.D. at 304-05.  "Typical" does not mean "identical."  *See In re Marsh & McLennan*, 2009 WL 5178546, at *10.  The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.*; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the injuries to Lead Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  Lead Plaintiffs allege that they, like the rest of the Settlement Class, paid artificially-inflated prices for Bankrate common stock during the Settlement Class Period as a result of materially misleading public statements by Defendants.  Accordingly, Lead Plaintiffs' claims and the claims of absent Settlement Class Members are based on the same theories and would be proven by the same evidence, and the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the claims of the proposed class representatives conflict with those of the class; and (2) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014); *In re Sadia*, 269 F.R.D. at 305.

Lead Plaintiffs here are sophisticated institutional investors with substantial financial stakes in the litigation and they have and will continue to represent the interest of the class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiffs and the proposed Settlement Class. Lead Plaintiffs and the other members of the Settlement Class share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *In re Drexel*, 960 F.2d. at 291). In addition, Lead Counsel has extensive experience and expertise in securities litigation and other class action proceedings throughout the United States. Lead Counsel is well qualified and able to conduct this litigation, as the Court recognized when approving its appointment as lead counsel for the putative class under the PSLRA. Therefore, Rule 23(a)(4) is satisfied.[4]

---

[4] Lead Counsel has and will continue to fairly and adequately represent the interests of the Settlement Class. Accordingly, Lead Counsel should also be appointed as class counsel for the Settlement Class under Rule 23(g).

**B.**      **The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class satisfies these requirements.

### 1.      Common Legal And Factual Questions Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See In re Marsh & McLennan*, 2009 WL 5178546, at *11; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) ("In determining whether common questions predominate, a court's inquiry is directed toward whether the issue of liability is common to members of the class.") (citation omitted).  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by Defendants forms the basis of all Settlement Class Members' claims.  There are numerous common issues relating to Defendants' liability at the core of this action (including whether Defendants' statements were materially false and

misleading, whether Defendants acted with scienter, and loss causation), which predominate over any individualized issues.  The predominance requirement of Rule 23(b)(3) is therefore satisfied.

<b>2.        A Class Action Is Superior To Other Methods Of Adjudication</b>

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, a class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of Bankrate common stock during the Settlement Class Period.  Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations.  *See, e.g., In re Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities claims"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible'") (citation omitted).

Here, the complexity of the claims against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.  Lead Counsel is not aware of any individual actions that have been filed by any Settlement Class Members concerning the claims asserted in this Action. Moreover, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the parties seek to certify the Settlement Class solely for the purposes of settlement.  In sum, the requirements of Rule 23(b)(3) are satisfied.

## III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Lead Counsel will notify Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort.  The Notice will advise Settlement Class Members of (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire* within ten (10) business days of the mailing of the Notice.  Lead Counsel will also cause a copy of the Notice and Claim Form to be readily available on the website of the Claims Administrator.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice and Summary

Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).  The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).  Accordingly, Lead Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

## <u>CONCLUSION</u>

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit 2 to the Notice of Motion, which will (i) preliminarily approve the proposed Settlement as within the range of fairness, reasonableness and adequacy; (ii) certify the Settlement Class and appoint Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to Settlement Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated:  August 6, 2014                                   Respectfully submitted,

                                                         **BERNSTEIN LITOWITZ BERGER**
                                                         **& GROSSMANN LLP**

                                                         */s/ John J. Rizio-Hamilton*
                                                         Salvatore J. Graziano
                                                         John J. Rizio-Hamilton
                                                         1285 Avenue of the Americas, 38th Floor
                                                         New York, NY 10019
                                                         Tel: (212) 554-1400
                                                         Fax: (212) 554-1444

                                                         *Attorneys for Lead Plaintiffs Arkansas Teacher*
                                                         *Retirement System and Fresno County*
                                                         *Employees' Retirement Association*

#816776